I will have the first case called. When I do call the case, the attorneys will be arguing. We would appreciate your stepping up to the dais and identify yourself for the record, at which point in time the appellant can remain and proceed with his argument. Also bear in mind that our microphone is there not to amplify but to record, so don't be surprised if you speak into the microphone and hear only your ordinary speaking tone. With that, I'll ask the clerk to call the first case. Case number 11-0493, AT&T Teleholdings v. Department of Revenue. Good morning. My name is William Goldman. I'm counsel for the appellant, AT&T Teleholdings. Welcome to what Mr. Liebling called the second city. Thank you. You may proceed when ready, Mr. Goldman. Thank you. Good morning. May it please the court. I would like to reserve five minutes of my time for rebuttal. I'll be fine. Thank you. The briefs cover a number of issues, and as you alluded to, many of them quite technical. This morning I want to get back to first principles and emphasize one fundamental, dispositive, overarching principle, one point, main point. In adopting the combined apportionment method for unitary business groups, Illinois intentionally rejected the separate company accounting method. In adopting it with regard to extraterritorial and distinguishing intrastate from interstate business operations. Is that right? That is correct. Do you have other instances where Illinois has adopted the combined method as opposed to the federal separate method besides that? Well, the Illinois, of course, Illinois can only tax income that's attributable to activities in Illinois. And so when you have a unitary business, which may be conducted not only in Illinois but also in other states, then the issue arises how to determine what portion of the income is fairly attributable to the in-state activities. And that is a uniquely state income tax problem. And that's for purposes of computing ordinary income and I presume also operational losses other than capital losses. Your Honor, the statutory phrase, and this gets right to the heart of the case, the statutory phrase is business income. And the statute, section 304E, requires the use of the combined apportionment method in order to determine what portion of the business income of the unitary business group is fairly attributable to Illinois. But what about this notion of the capital gain and loss? Yes, well, the phrase is business income. So that's income earned by the business in the regular course of business activities and that income may be capital gain, it may be ordinary income, it may be a capital loss, and it may be an ordinary loss. And there is no exception in the statute. There is no exception at all for any special treatment insofar as business income is concerned. There is no special treatment for capital losses. Now, in determining in this case, of course, we're trying to determine the --. The statute in isolating extraterritorial business from intrastate business. How would the allocation of capital losses play into that? Yes, well, that pursuit. Okay, and, of course, that's the issue in this case. In this case, the Ameritech unitary --. Now, this is not a case of intra versus extrastate. I'm asking you how that would play into the pursuit of separating Illinois business from out-of-state business. Well, it really is. This case does involve isolating the income properly attributable to Illinois from the balance of the business income of the unitary business. So, I mean, that's always the purpose of the exercise. In part, it involves that, but at a certain point in time, once you've finished isolating Illinois business from extraterritorial business, then begins the process of isolating capital losses attributable to the gains of a former unitary group that has been acquired by another company from the losses of that other company and from the losses, perhaps, of members of that same unitary group that incurred the gain in the first instance. Am I clear? I think I can answer that question. Not 100 percent, Your Honor, but I think I understand where we're going with the question. Let me see if this is helpful to you. Ultimately, the ultimate final issue in this case is to determine the Illinois taxable income, business income of the Ameritech, that was the acquired unitary group, in 1999, a year in which it filed its own combined return separate from the SBC companies. Ameritech did not become part of the SBC unitary group. Until October 9, 1999. No, actually until January 1. For Illinois purposes, but for purposes of the federal consolidated complaint, that started immediately upon the acquisition. That is correct, because the only test for federal... So there was only one return filed federally, but two returns filed for purposes of Illinois. Yes, one return filed by the SBC group. And so in 1999, the Ameritech group had a large capital gain. That's business income stipulated and found by the ALJ. That was business income, and so, of course, Illinois could properly tax an apportioned share of the capital gain from 1999. Now, in 2002, the SBC unitary group, of which the Ameritech companies are now a part, incurred a very large capital loss. And everyone agrees that the portion of that loss, properly attributable to the activities of the Ameritech companies, may be carried back, separated from the balance of the capital loss. As may also net operating losses since 1985. Is that right? Because the carryback applies to ordinary loss as well as to capital loss. And we would have to try to distinguish between the methodology which the state may use to compute the carryback or to allocate the carryback on net operating losses from the methodology that, namely the federal type of separate business accounting method, which they deploy in calculating the allocation of the net capital losses back to the pre-acquired business activity of, and notice I didn't say unitary group. I said business activity using a neutral term, of the Illinois companies, namely of the Ameritech companies. Well, the issue for the court is to determine in the year 2002. Do you have a question? I do, but I'll wait until you finish your statement. I don't want to interrupt you. Okay. I'll try to be brief. The issue before the court, everyone agrees that whatever portion of the capital loss of the unitary group in 2002, whatever portion of that is fairly attributable to the activities of the Ameritech members of the group, may be separated, attributed to them, and carried back by them to 1999. Yes. And there is, that's it. Now, so, your position is that that portion represents approximately 28% of that capital loss, should be used against the capital gain that Ameritech had in 1999. You came up with approximately 28% based on the apportionment method that you think is correct, whereas the department concluded that approximately 2.3% of that, some billion dollar, how much is the loss? The total loss is 3.6 billion. Okay. Now, in a nutshell, can you tell us why you believe 28% of that capital loss suffered by the group, SBC, whatever they're, I mean, we're referring to them as SBC and Ameritech in the briefs. But anyway, why that 3.2 billion? Of that, or 3.6 billion, of that, 28% is attributable to the, you know. To the activities of? Yes. The Ameritech company. Let me fine tune that just a little bit. What I understand in the combined method, you would use gross receipts as basically the measuring standard. And you would compare the gross receipts, the accumulated gross receipts of the former Ameritech unitary group against the total gross receipts of the newly formed super SBC unitary group, which includes the Ameritech group. And you would use that as a multiplier. That would become a fraction that would be multiplied against the net capital loss of the entire SBC super unitary group. That is correct. That is correct. Okay. Now, it seems now, from there, I wanted to fine tune this. Evidently, the difference between the department's approach and your client's approach is both in terms of whether gross receipts now becomes the measuring standard, and whether the total former Ameritech unitary group, who were incorporated into the super SBC unitary group, whether their accumulated, presumably, losses against the total losses should be used as a, well, let me make myself clear. You would say you need to compute the ratio based on the ratio of the old unitary, of the Ameritech unitary group against the denominator of the entire new super unitary group, and that you would use gross receipts as its measurement. The department, evidently, will use only the individual loss sustained by those members of the Ameritech unitary group, who were actually, who actually sustained a loss in the 2002 year, and only that would carry back to the 1999 year, and only with respect to those very same companies. Is that right? No, that is not correct. All right, then, correct. All right. So, there are two approaches here. I strongly take issue with the use of the word sustained, because that implies that we know how much of the loss was actually incurred by the Ameritech members, as opposed to the word, the proper word to use is reported. This is how much they reported for federal income tax purposes, and this is how much they reported, and we put that in italics, old, underlined, this is how much they reported based on separate company accounting. And so, the choice that the court has is whether it is a valid measure to take the business income. Aside from our semantics. It's not semantics. It's the heart of the case. But it's still semantics, because we both know the reference to which my language refers to, as well as to yours, we don't know its connotation, its connotative meaning, but we know that it is to what we're actually referring to, tangent. So, if I might. Of course you may. Is there any, if this were the federal system being used, is what I describe the correct description of what would have taken place under the federal separate business accounting system, as opposed to what takes place under the combined reporting system that governs extra, the division between extra, state, and interest rate? Yes. We have not disputed their reading of the federal consolidated return regulations, insofar as to how they would apply at the federal level to a federal consolidated group. So, the question then becomes, it seems, whether there is first a cogent rationale for distinguishing the computation, the allocation of net capital losses from the combined system used to allocate ordinary income, other, you know, and two, whether regardless of its rationale, or let's put it this way, that's not a full alternative, to whether it is authorized constitutionally and by statute. And obviously, if it's not reasonable, it's an easier case to make that it's not authorized. But if it is reasonable, it may not be the be all and end all. Okay. Let me address the rationale for why we think 28 percent is the correct number. Could I interject? Because I just want to ask you. The department concluded that the 2002 net capital loss could only be carried back and allocated to the two members of the SDC unitary business group that had reported a loss on their federal consolidated return, but at the same time, they were members of the 1999 Ameritech unitary business group that those were the only capital losses that could be carried back against the capital gain that Ameritech had in 1999. That's what they concluded. Now, tell me why that is improper, unfair, and doesn't interpret correctly the statute as you see it, if you can explain that. Yes, because that approach assumes that when each member of the group reported, Which group are you talking about? Of any group, but I'm talking now about the 2002 SBC group. Only ten members of the group actually reported net capital losses. Okay. But only two of those ten were former members of the Ameritech unitary group in 1999. Right. You want all ten of those. Is that what you're saying? It's not a question. No, no. There are two approaches. One is combined apportionment. One is separate accounting. They say they're using combined apportionment. No, they say they're using separate accounting. They're very explicit. I think we have no dispute about that. They seem to justify in terms of the rationale. And here's the rationale. What you have to decide is when you have income earned, or in this case, business income, in this case, the capital loss. There was a finding below, and it was stipulated by the parties, that that $3.6 billion capital loss was business income. It was stipulated. The rationale that I've gathered from the state, from the department's arguments, are, among other things, and I'm not claiming to necessarily agree or disagree with it, that the whole basis for the combined approach with regard to unitary business entities, that ultimately led to the adoption of the single return rather than simply combined separate returns, is because it's difficult, among other things, to trace the true. Well, I'm telling you what they say. If you disagree that they say it, indicate so. But if you disagree with what they say, I'm not telling you that I agree with it. Okay. So they say that with respect to ordinary income, when you're dealing with unitary companies whose business activities are fully integrated and commonly owned, the mere fact that the cash register is in one company doesn't mean that the income is not generated by the other companies as well. So you have to do it on a combination basis. And that, on the other hand, they say that when you're dealing with items like capital losses, it's easy to identify the source of the gain and the source of the loss that the gain seeks to, that the loss, the gain which the loss seeks to absorb. That assertion, that assertion that it's easy to identify the source of the capital loss, is directly in conflict with the opinions of the Illinois Supreme Court in the Caterpillar case and citizens' utilities. The whole rationale. They don't deal with capital gains. They deal with business income. They deal with operating losses. The capital loss is an operating item. It is business income. It was generated cooperatively by all of the activities of the group. On the other hand, the handling of the tax liabilities with regard to capital gains and losses is special. It involves actually an offset of a very specific type of gain by a very specific type of loss. The type of gain and the loss is in itself identifiable, and the sources of those losses and gains are identifiable, which doesn't necessitate, but basically the compromise that is always inherent in any kind of averaging or marginalizing the treatment of a receipt, whether it's a receipt of income or a receipt of loss. This, I mean, you've absolutely put your finger on it. And they also talk about the fact that they identify it as something that's pre-apportionment versus post-apportionment. That when you're dealing with a capital loss and a capital gain, you're talking about those computations that under any system are going to be made before you can recognize the gain. Every time, every company has to identify a gain, and they cannot identify the gain without subtracting the loss, particularly the capital loss. In 1999, the Ameritech Unitary Group reported a substantial capital gain. That gain was apportioned to Illinois using combined apportionment. It made no difference which member of the group reported the gain, and it made no difference. But why would there be a need to compromise the reality through an averaging process if the reality itself is independently ascertainable? It's not independently ascertainable. That's the point. Illinois has decided, the Illinois Supreme Court and then the Illinois legislature, by enacting Section 304E, has conclusively, dispositively decided that separate companies have to. I'll do a deference. That's the question. That takes us in a circle. Let's assume that you don't have on your side right now the force of dogma. The Supreme Court said so, or the statute said so. Let's say we're reasoning to that eventuality. Why would we want to reason to an eventuality that leads to a compromised figure when the actual figure is identified? Because all of the authorities forget for a moment the distinction, which obviously is at the heart of the case, but please forget for a moment capital gain versus capital loss versus ordinary income versus ordinary loss. All of the authorities discuss. There is no authority. The state has pointed to no authority that says somehow you can identify the separate source of a capital loss, but we are unable to identify the separate source of the capital gain, the separate source of ordinary income, or the separate source of an ordinary loss. We demonstrated in our brief that when it comes to ordinary income and capital gain with all due deference, there is no law that can change a percept unless it's a totalitarian state where they tell you what you see is not what you see. The regulation or the statute cannot change something that's identifiable into something that's not identifiable. They can only tell us, treat it as if it's not identifiable, and that's what I gather from your response. Your response is not that you cannot specifically identify the loss and the source of the capital loss or the capital gain and the source of the capital gain, but you're telling us the law says treat it as if you can't. No, I have. Because it's an easier precept to accept the notion that ordinary income, that ordinary losses are not identifiable. That's not what I'm saying. What I am saying is that the authority is that all business income, all business income of a unitary business group, the source of that income is the combined, integrated, functionally integrated efforts of all members of the group. The Supreme Court has said this in container. Earlier, I was trying to get just if you could capitalize. I understand the department's allocation, but it should only be the two members of the business group for SBC that reported the loss and their compounded return and who are also former members of the Ameritech business group. But your position is that that is not the appropriate calculation. What does the 28% represent in terms of your, in a nutshell? In a nutshell. Or let's go ahead and ask another question. In a nutshell, business income of a unitary business group may never be divided and attributed to a member of the group on the basis of separate company accounting. That is the fundamental point. And because the income is earned by the group as a whole. But how do you come up with your 28%? So now you say it's an activities-based tax. How much of the income is attributable to the activities of this company? Or how much is attributable to the Illinois activities? Or how much is earned by all of the activities of all of the group in a functionally integrated fashion? And the method that you use to attribute a portion of that income to a portion of the activities is the method chosen by the Illinois legislature. And the legislature chooses an objective measure of what is the contribution of particular activities. In this case, in 2002, the objective measure chosen by the Illinois legislature is sales. There used to be a three-factor formula, payroll, property, and sales. That's a legislative choice. There are a number of reasonable methods. But these are objective measures of the contribution of activities. And in 2002, the measure chosen by the Illinois legislature is sales. Twenty-eight percent of the sales were sales by the Ameritech members. And so they are given credit for contributing 28% of the activities that generated that capital loss. Just as it turned out, 8.8% of the group's sales were Ameritech Illinois sales. Mr. Goldman, I think perhaps you've answered Justice McBride's questions. So my stay is over on my question. I appreciate it. So let me ask, where is there in the federal statutes or regulations an explicit application of the combined method to capital losses or gains? Now I have some more fine-tuning of that question, because you're going to answer me, business income. But when there is a rational distinction between one form of income and another, one has a right to expect the authority to explicitly extend its rule to cover both. If it doesn't, then that provides a loophole through which to avoid what is the rule with regard to ordinary income from any rule that would likewise govern capital losses and capital gains, which have their own independent rationale, which exists without conforming to the rationale that would have governed that rule with regard to ordinary income. I think you may be operating under a misunderstanding, Your Honor. In Illinois, capital gains are not attributed on the basis of separate company accounting. They are treated just like ordinary income, and they are apportioned based on activities. There is no special treatment for capital gains. But they're specially identifiable, and they are at least given special treatment under the federal rule. But they do not partake of the same necessity that may have generated or justified the combined approach to ordinary income and loss. And that's actually one of the pivotal points of where this decision hangs, because you do not have an explicit pronouncement in any statute extending the combined method to capital losses. So the question remains, is this a question of saying that if it's a yellow stock certificate, it's one way, or if it's on Tuesday, it's another, or whether there is a rational basis to distinguish between the two. So there is no statutory authority in Illinois for creating a separate assumption, assumption that separate company accounting is somehow valid for attributing a capital loss when the whole thrust of the statute in Section 304E and 502E, the Illinois Supreme Court decisions in Caterpillar and in Citizens Utilities, all say that separate company accounting may not coexist with combined accounting. Does separate company accounting exist in establishing the individual gains of members of the unitary group before you can allocate? No, Your Honor. No, Your Honor. Well, how does one establish, isn't it necessary at some point in the accounting? I'm going to give you a technical answer now. All right. Illinois, pursuant to Section 502E of the Illinois Income Tax Act, must treat all members of a, and I'm getting to your answer, but it starts with 502E, must treat all of the members of a corporate members of a unitary business group as one taxpayer. Now, I had my prepared remarks to show how that is further giving effect to combined apportionment, how that is further a rejection of separate company accounting, which all of a sudden. Now, incidentally, let's talk about that for just a minute. To what extent does that rule apply to 1999 activities? Oh, it applied across the board. Because the single tax return came into being post-2000, I don't have the exact year. No, Your Honor. But it wasn't in effect in 1999, was it? Yes, it was. Yes, it was. The chronology, and I appreciate the time, but it's crucially important to me. The chronology is that you had a general apportionment statute in Illinois, and the Illinois Supreme Court in Caterpillar interpreted that statute as requiring combined apportionment for a group, and in that opinion, the court stated explicitly that the income reported by a member on separate company accounting basis is not attributable solely to the activities and efforts of that member. It is attributable to the combined integrated efforts of the group, and therefore separate company accounting is never permissible. Now, then there was an effort, legislative effort, to overturn Caterpillar and to reverse it and to say, no, we'll have separate company accounting. That passed the legislature. The governor sent his amendatory veto, and it ended up going 180 degrees in the opposite direction. The Illinois legislature affirmatively, explicitly adopted Section 302E, saying, and now enshrined in the statute, yes, we have combined apportionment. What that meant was the rationale for that, which is discussed in our brief, is separate company accounting is never an appropriate basis, ever, never, ever, an appropriate basis for dividing the income of a unitary business group because the rationale, the philosophy is all business income, including business loans. How are grocery seats computed? Grocery seats are, well, the statutory term is sales, and sales is defined as being grocery seats. That is measured on a separate basis. But that is the way you determine how much is attributable to Illinois. The argument is that's how you determine what a gain is by subtracting out the loss. No, because that is used as a receipt, but generating the activity that gave rise to the gain was a combined activity of all of the members of the group. You can never attribute gain or income to an isolated, on the basis of separate company accounting. Okay, so now we have the statute, but they were filing separate returns, I'll say, on a unitary basis. So then they said, okay, the Illinois legislature said, let's have section 502E, which will permit companies to elect to file a single combined return and treat all the members of the group as one taxpayer. That is moving along a continuum away from separate company accounting, away from saying, oh, 2.3%, away from what the department is doing, towards our approach, which is combined apportionment. Then, most directly for this case, the Illinois legislature modified 502E to make it no longer elective but mandatory in 1993, and simultaneously enacted section 1401B2, which directed the Department of Revenue to promulgate regulations to give effect to treating all the corporate members of a unitary business group as one taxpayer. The regulation that we are concerned about in this case was promulgated pursuant to that legislative grant of authority. The section 5270 of the Illinois regulations is part of subpart P, but if you look, it's all just laid out in our brief. All of that was supposed to achieve the objective of disregarding corporate formality and treating all of the companies as one taxpayer, because all of the business income of the group is earned by the group as a single integrated economic enterprise, and it doesn't matter who represents it. It doesn't matter if there are ten subsidiary companies in the unitary group who sustained losses, or if there's only one. The one carries the flag for all of the ten. It doesn't matter who reported the loss. I cannot accept the word sustained, because that assumes the answer to the question. But it carries the flag for the entire group, even though of that entire group, only one was present in that group that sustained the gain. When it comes to combined apportionment, you don't even need to know who reported. You need to know the total income of the group, and you apportion it based on activities, and you use the objective measure of activities that the Illinois legislature has given you. So now we've gone from Caterpillar to Citizens Utilities to Section 304E to Section 502E to Section 1401, which is the authority for the regulations, all saying, all of those said in every case, separate company accounting is forbidden. Separate company accounting is invalid. You cannot say, on the basis of separate company accounting, what is attributable to any member of the group, because separate company accounting misses the boat when you have functionally integrated unitary business. The income is earned by the group. And separate company accounting fails to take into account the benefits of centralized management. It's all in all the cases. It uniformly rejects it. Now, it would be, I'll say perverse, that's the word we used in our brief. It's a fraud. Well, you said it too, and I'm glad you noticed it. It would be perverse for regulations promulgated under a statutory grant of authority directing them to treat all the members as one taxpayer, that that could somehow morph into authority for a regulation that goes all the way back to pre-Caterpillar and says for the first time in Illinois, whoops, separate company accounting actually works. Separate company accounting tells you how much of the capital loss is actually. There would clearly be, as a matter of actual reality rather than legal reality, complete serendipity to the former unitary group. I'm sorry, sir. Where it would be a windfall. Well, the issue in our terms. In terms of the actual accounting reality rather than what you have postured, as the legal requirement. There is no windfall in this case if you accept that Illinois is a combined apportionment state, because the only basis for alleging that there is a windfall is to say, oh, 3.2 billion of this loss was reported by an SBC company. That means somehow it was earned by the activities of that SBC company, and now we are somehow inappropriately carrying back a portion of a loss attributable. You would use the word sustained. This is a term earned by activities appropriate in computing capital gains and losses, which involves the sale of an asset. Illinois has decided that activities is exactly the right word to use when you're talking about the business income of a unitary business group, because the business income is earned by the group as a whole. If separate company accounting were a valid basis for attributing income among the members of the group, the Caterpillar case would have gone the other way. If separate company accounting were a valid method, Section 302E would never have been enacted. If separate accounting were a valid method, Section 502E would never have been enacted. Thank you. Mr. Goldman, I think you can wrap it up. All right. Hopefully I have some time. You'll have your time for rebuttal. Thank you very much. Thank you. Brian Barrett, Assistant Attorney General on behalf of the Department of Revenue and the Director. This is fundamentally not a case about apportionment or about combined apportionment. It's a case about computing base income. Base income is computed before apportionment occurs. The way it works in Illinois is Illinois corporations, they start with federal taxable income to compute their base income. Once the base income is computed, then it's apportioned under Rule 304. You can look at the statute itself. Rule 304 comes under Article 3, which is titled Apportionment and Allocation. How are capital gains computed as opposed to capital loss? Capital gains are computed under Illinois, starting under the field. Illinois follows the federal rules for computing capital gains. Separate accounting for capital gains and capital loss? Separate accounting for capital gains. Are capital gains given the ordinary business income treatment as opposed to capital loss? Capital losses, strictly speaking, don't exist under capital loss. The Illinois law changed the law under Section 207 to create something called an Illinois- Except for the carry back, I imagine. But to that extent, they're not different from the carry back of ordinary gains. Well, not so much. Now in Illinois, there's something called a net operating loss, which is- I guess I misspoke in Illinois. In Illinois, there's something called a net operating loss, which is now post-apportionment. In Illinois, capital gain is treated under the federal rules according to 5270A1. It's individual company by individual company. The ratio, the methodology that the department used, you look at the ratio of the net capital losses to the total capital losses, then apply that on the original basis to offset the capital gain of the separate company. That's Illinois law's third. And the capital gain of the separate company is not decided on any formulaic basis? No, it's allocated. Essentially what you're doing is you're treating the unitary group as a federal consolidated group under Illinois law when computing the base income. What does that mean exactly? Does that mean that each company's capital gain is separately dealt with, or is it combined and averaged in any way? It's separately dealt with. It's averaged in the sense that you look at the net capital loss, total capital loss, but it's separately allocated to each separate company under federal law. Illinois follows federal law for the computation. Again, the individual gain of the individual company. Yes, that's correct. That's how Illinois law works. That's really this case in a nutshell. You're computing base income. Base income does not get apportioned. Base income is computed on a separate company basis. Once base income is combined, that's when the apportionment occurs. The taxpayer takes almost sort of a magical or mystical approach to apportionment. They suggest that somehow this is imbued to every item. Every item in the tax code gets apportioned. That's not the case. That's not what Caterpillar says. It's not what 304E says. It's not what 502 says. It's not what 1401 says. It's not what any of the Supreme Court cases say. Apportionment was created for a specific purpose, as you pointed out, originally to allocate income geographically so that states can properly capture the- The question is what it morphed into. It may have started with a given rationale, but we often find that the law becomes generalized rather than broken into splinters, adhering strictly to the matrix of the rationale that would apply to it. But Illinois didn't change that, didn't change any of that. Well, except that there's some dispositive language talking about a unitary taxpayer. If there's a unitary taxpayer, wouldn't that certainly negate a separability, a separable computation for purposes of allocations? Because that would be, in that sense, schizophrenic because it would break a one into fractions. No, Your Honor. There's nothing inconsistent. No. The unitary business applies to computing- is apportioning your net business income to create your net business income. You create the base income. It's almost like the pie. This is what goes into the pie. This is your base income. Then apportionment applies. Apportionment decides what state gets what slice of the pie. And that's what apportionment does. There's nothing in Illinois law that suggests you apportion before- Are they also- should they also be dealt with on a separable basis as being computations that are pre-apportioned, pre-allocation? No. Because, remember, a gain gets applied in the year in which it's incurred. And it only gets- at least it gets applied in the year it gets incurred. The point of throwing- carrying back and carrying forward capital losses is to sort of income average so that companies don't get hit with- it encourages investment. I'm not sure of the rule- the taxation rule involved. But if you don't have capital gains to offset against the capital loss, can you offset the capital loss against net operating gains? No. Capital gains can only offset against capital losses. And that's it. So that if you don't have capital gains, you lose the benefit of that loss, even though there would be ordinarily a carryover if it were ordinary gains and losses. It shouldn't carry over as an ordinary loss if there's no capital gain to offset against it. No. Generally speaking, ordinary income gets offset against ordinary losses. Now you're saying generally speaking, and I'm no longer sure of how categorical your answer is. Ordinary income- ordinary gains get offset against ordinary losses. Capital gains get offset against capital losses. That's the way it works. Well, that's the way it could work. But the method of offsetting those is what you're- Correct. That's correct. And I understand your method, but you explain to me why their method is incorrect. Their method is incorrect because- First of all, how do you understand what they've done in terms of offsetting the capital loss from the capital gain that Ameritech had in 1999? Their problem has two flaws. Number one, the primary problem in this case, is that they're trying to apportion the computation of base income. They're trying to apportion income while it goes into the base income instead of apportioning it after the base income is computed. That's the number one problem in their case. And from that, all of their- the rest of their problems flow. What's the magic of that division, of that distinction between the pre-allocation or pre-apportionment versus post-apportionment? Why is there a magic in that? There is no magic. What's the ultimate rationale that makes that dichotomy significant? Illinois decided to follow the federal taxable income. Administrative ease, ease of tracking companies, ease of when companies leave different groups and change ownership. So Illinois follows the federal taxable income in computing the base income. That's the starting point. You look at the federal taxable income. Then there are Illinois addition and subtractions. But here we're not even at the Illinois addition and subtractions. We're talking about how do you compute the federal taxable income of this unitary group? It's treated as if it were a federal group. You compute the base income of this federal group by following the federal rules for allocating net capital losses. That is done on a separate company basis. Now, why? Simple question. What is the magic of using the federal method as opposed to using the combined approach? It's not not combining the combined abortion method. We're talking about different stages of computation. But if the case law and the regs seem to be dealing with the allocations on a unitary basis to carve out losses, capital losses, from that kind of accounting analysis would require, at the very least, a total rational justification to show why that allocation is not covered by the general rules governing all allocations. Your Honor, I guess I disagree with all due respect to the premise that anything in Illinois law suggests that income that goes into base income, every item of income has to be apportioned before it goes into the base income. That's just not Illinois law. It's not what the statute says. But I notice you're being deliberately shy of coming out with the other rationalia that I found in the ALJ's report and in Judge Murray's report, dealing with the distinctive nature of capital losses. I see, I think, I detect that you're deliberately skirting away from that, and now you have my curiosity. No, Your Honor. I'm sorry. I suppose maybe I didn't fully understand the question, Your Honor. The point is, and I think as the court pointed out and the administrative law just pointed out, their allocation of losses is to the companies that incurred them. Here you have a group, a 1999 group, which SBC was not a part of, and what they want to apply is a special rule that applies only to them. They want to, therefore, take advantage of the lion's share of this loss. And that's just not, it can't be correct under Illinois law. Because you say so, or because you're basing it on a regulation case? The former director of the department is of the exact opposite opinion, is he not?  I think that he, they were talking about different things. They were talking about net operating losses at the time, about apportioning net operating losses. And net operating losses are, I'm sorry, Illinois net losses. The terminology is very confusing. The Illinois net losses are post-apportionment. They exist now. They didn't exist then. They're not the same as capital losses. Illinois law, when they created net operating losses, did not decouple from the federal regulation. They created this sort of unique entity. That's what they were talking about. Is the integrity, that is the wholeness, the definable wholeness, of a net operating loss more difficult to identify as the source and extent than a capital loss? Yes, probably. Because if what I understand you're talking about when you say net operating loss, you're talking about the loss in sales and who contributes to the sales of a loss in that regard. Because you're not contesting the use of the ascertainment, the allocatability of a net operating loss on the basis of the combined method, but you're isolating capital gains and capital losses as being distinctive enough to be deemed excluded from the generic language of the case law and the statute that deals with business income generically, generally. No, no, Your Honor. And I mean correct. Because, again, when you're computing base income, you're going to look at all of it. You're still going to combine on a separate company basis, whether it's operating losses or capital losses. Again, apportionment, of course, after the base income is computed. We're before the apportionment stage. We're talking about base income, computing the base income. What are the items that go into the base income? Items that go into base income are going to be, even in a Caterpillar company, when they combine their base income, they took the 75 companies and put it all together, and then they apportioned it out to determine what's the net income that Illinois would be able to tax. Here we're talking about the base income. You know, we're talking about identifying the amount, which can be an amount that is identifiable on a separable basis or can be identified on an accounting basis as being ascertainable through certain averaging procedures. But there's nothing sacred about the notion that the capital loss has to be, so to speak, pristine as opposed to being an accounting construct. And there's nothing equally magical about apportioning it either before it goes into the base income. And yes, when you're talking about the ordinary income of a company, its losses, the sales, those are more subject to apportionment because it's more difficult to source where the income or the loss occurs. When you're talking about a net capital loss, it's very easy to determine where the capital loss is. But it may be very easy, but it may be too late because the difficulty in the one might have generated rules that applied to all. But that isn't what the rules say. That is not what the federal rules say. It's not what the Illinois rules say. Is there anything else? No, Your Honor, I think that's about it. Again, if I can summarize, you know, tax base is governed by federal allocation rules. The department applied those rules correctly. The department's decision should be approved. Thank you. I'll do my best. Thank you. First, this comment about base income, base income. Remember, in Caterpillar, initially, each member of the group separately apportioned its separate company income. It started, it said its base income was its separate company income. And so each member of the group separately apportioned whatever it had reported based on its activities. This was rejected by the Illinois Supreme Court. The Illinois Supreme Court said the claimed income. Justice Ward. I'm sorry? Justice Ward. Great justice. Thank you. The court said the claimed income of each member does not reflect conducting a unitary business, and it is not attributable solely to the efforts of a particular member. And so the Caterpillar case was only about base income. If that would have been a valid measure of base income, separate company accounting, then the case would have gone the other way. The issue is not base income. The issue is can you ever divide the combined income of a group, a unitary business group, on any method other than formulary apportionment? Is there any variety of separate accounting, separate geographical accounting, separate corporate accounting? Can any kind of separate accounting ever be acceptable as a basis for allocating an item? But that is already there to go around the block a second time with regard to gross receipts. You ultimately have to have a source for data, and it is separate for whatever data it supplies. And the argument is that when you're applying a capital loss against a capital gain, what you're simply doing is computing the data that would emanate from that specific entity to the group. The Illinois legislature could have used a legislative choice. The Illinois legislature, and maybe in some cases it doesn't work, but they chose that as a measure of activity. But they didn't accept. I mean, if separate company accounting, which is what they're doing here, were ever acceptable, if it were acceptable for unitary business groups, all of the authority I've referred to would have been decided the opposite way. Now, the statement was made that there is separate accounting for capital gains in Illinois in response to your question. That is not correct. We do not agree with that. Remember. I think, I don't think I got together that. Fine, then I'll pass. I think he seemed to indicate that capital gains are not distinguished by their mode of allocation from net, from ordinary. Right. But now let's suppose that you've got a group where one member reports a $1,000 of capital gain, which would be attributed to Illinois and other states based on activities, the measure of activities, and another member has a loss of $100. So now the group has a net capital gain of $900, and that $900 gets apportioned based on activities. Under that regulation that uses that illustration. Yes, but the point is the loss didn't get any separate treatment. The loss was treated the same way the gain was. They got added together. And the net did not identify capital gains. It could undoubtedly have been dealing with ordinary gains, which you are allocating to be no different than the treatment that should be allocated to capital. But in 1999, the Ameritech group had a net capital gain, but it had some capital gain, very large capital gain and some capital losses, and they were netted together. The effect of that is that the losses were then, in effect, passed around and attributed to activities in exactly the same way the gain was. They didn't apportion the gross gain and separately deal with the capital loss. They netted them together, and they treated them both in effect the same way. My doubt is that it results in the losses generated by strangers to the old Ameritech unitary group to benefit the old Ameritech unitary group. Exactly just the opposite is happening, Your Honor. Well, because the losses generated by the, let's assume, ten companies in the SBC unitary group, of which only two were members of the original Ameritech unitary group. No, sir. No, sir. The losses were not generated separately by separate members of the group. That's like saying ... By the group. But that group includes 20 and 80 percent or whatever foreign group of entities. No, sir. The capital loss of the group was generated by the group as a whole without regard to who reported the loss. And if we are not permitted to carry back our contribution to the loss, we are way overtaxed. I mean, this is not a question ... We're not allowed to deconstruct that group for purposes of capital loss allocation. That's your point. No, my point is you have to attribute a portion of the loss to the Ameritech companies, and you have to do it the right way. And if you use separate company accounting, we are deprived of a fair measure of the capital losses that are attributable to our activities. Illinois has told you that when you apportion or attribute a share of the business income of the group to a subset of the activities, which is necessary because we have a separate return year, we have to separate out the Ameritech share of that loss. Twenty-eight percent of that loss is attributable to the activities of the Ameritech groups. Originally you were 95 percent, which you have modified. Yes, because initially the wrong comparison was made. It was based on they used the share of Illinois gross receipts when they should have used as the share of total gross receipts. But from our point of view, we are taxed in 1999 on capital gain attributable to our activities. We want to carry back the capital loss that's attributable to our activities, and we are being prevented from doing it. And it's not a question of a windfall to us. We are being way overtaxed on an amount that's out of all appropriate proportion to what's fairly attributable to our activities. And the irony is that after you carry back this minuscule loss using separate company accounting, you all of a sudden give effect to corporate structure, which is the antithesis of what the legislature has told you to do. Now, once again, you're going to apportion it to Illinois based on activities. So you've got a pool of gain, a pool of gain that's been determined without regard to activities, and then you're going to ‑‑ it's an incommensurate base. It's an inappropriate base. So we're not seeking to carry back anything that is fairly attributable to the activities of any SBC member. Of course we agree we cannot do that. This case is the opposite of a windfall. Thank you. Thank you. This case was superbly argued and superbly brief. It presents us with a challenge to take with us under advisement, which we will, and hopefully whatever result we reach will not be attributable to a lack of effort by any of the parties.